**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| **LINDA KROUTTER**, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>**TRUSTAGE FINANCIAL GROUP, INC.**,<br><br>        Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Linda Kroutter ("Plaintiff"), through undersigned counsel, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant TruStage Financial Group, Inc. ("TruStage" or the "Company"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to her own actions, counsel's investigations, and facts of public record.

### NATURE OF ACTION

1.      This class action arises from Defendant's failure to properly secure and safeguard the highly sensitive, private, and confidential personal information, such as name, date of birth, and/or social security number ("Confidential Information" or "PII") that Plaintiff and a class of consumers entrusted to it.

2.      TruStage is a financial-services and insurance provider that markets, sells, and administers a wide range of consumer-facing products, including credit insurance, disability insurance, and other lending protection products such as Guaranteed Asset Protection (GAP) for auto loans, mechanical repair coverage, payment protection products, and employee-benefit and investment account platforms.

3.      As a financial-services and insurance provider, TruStage is acutely aware of the critical importance of cybersecurity in this digitally interconnected world. Indeed, TruStage holds itself out as a cybersecurity authority, providing cybersecurity and risk-management products to credit unions and other financial institutions across the country through its Business Protection Solutions suite of products.

4.      To obtain and use TruStage's consumer products and services, Plaintiff and members of the Class were required to entrust TruStage with their Confidential Information, ranging from personal details to financial records. Additionally, upon information and belief, the Confidential Information of Plaintiff and the Class were provided to TruStage from their financial institution for marketing of TruStage's financial and insurance products and services.

5.      But Defendant lost control over that sensitive and confidential data. On or about July 15, 2026, TruStage announced that it was suffering from a cybersecurity incident (the "Cyber Vulnerability Incident" or the "Data Breach"). On information and belief, unauthorized third parties accessed TruStage's systems.

6.      On information and belief, the Confidential Information compromised in the Data Breach includes personal identifiers and financial account information that Plaintiff and Class Members provided to TruStage in order to obtain its consumer insurance, lending protection, payment protection, and related financial products.

7.      On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to maintain reasonable security safeguards or protocols, and failed to take reasonable or industry-standard measures to remediate known vulnerabilities, sufficient to protect the Plaintiff and the Class's Confidential Information. In short, Defendant's failures placed

2

the Class's Confidential Information in a vulnerable position—rendering it an easy target for cybercriminals.

8.    Plaintiff is a Data Breach victim, and she brings this class action on behalf of herself and all others harmed by Defendant's misconduct.

9.    The exposure of one's Confidential Information to cybercriminals is a bell that cannot be unrung. Before this Data Breach, Plaintiff's and Class Members' private information was exactly that—private. Not anymore. Now, their private information is exposed and unsecure, exposing them to ongoing risks including identity theft, account-takeover fraud, and other forms of misuse.

10.    Plaintiff and Class Members bring this action to recover damages, to obtain restitution, and to compel Defendant to adopt reasonable data-security practices to prevent future harm.

## PARTIES

11.    Plaintiff Linda Kroutter is a natural person and citizen of Mobile County, Alabama, where she intends to remain. Plaintiff provided her Confidential Information to Defendant in connection with a TruStage consumer insurance policy and is a victim of the Data Breach.

12.    Defendant TruStage Financial Group, Inc. is an Iowa corporation with its principal place of business located at 5910 Mineral Point Road, Madison, Wisconsin 53705. TruStage provides insurance, lending, and financial-services products to consumers and to credit unions and their members throughout the United States. TruStage's registered agent for service of process is C.T. Corporation System, located at 400 E. Court Avenue, Suite 110, Des Moines, Iowa 50309, and TruStage is a citizen of the States of Wisconsin and Iowa.

**JURISDICTION AND VENUE**

13.     This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (1) this is a class action containing class allegations and seeking certification of a proposed class, (2) the citizenship of Plaintiff is different from the citizenship of Defendant, and there are more than 100 putative Class Members, and (3) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Defendant because Defendant's principal place of business is located in this District, Defendant conducts substantial business in this District, and Defendant has purposefully availed itself of this forum.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, and pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant resides in this District, where its principal place of business, relevant data systems, and cybersecurity, budgeting, and incident-response decisions are located.

**BACKGROUND**

***Defendant Collected and Stored the Confidential Information of Plaintiff and the Class***

16.     TruStage is a financial-services and insurance company headquartered in Madison, Wisconsin, that markets and administers consumer insurance, lending protection products (including credit insurance, disability insurance, and GAP for auto loans), mechanical repair coverage, payment protection products, and employee-benefit and investment account platforms to consumers throughout the United States.

17.    As part of its business, Defendant receives and maintains the Confidential Information of Plaintiff and millions of other consumers. In collecting and maintaining this Confidential Information, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law.

18.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Confidential Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting that information from unauthorized disclosure and exfiltration.

19.    Many Class Members provided their Confidential Information to TruStage indirectly, through the credit unions and other financial institutions of which they are members. As a condition of membership and of obtaining financial services, those Class Members furnished their Confidential Information to their credit unions, which in turn provided it to, or made it accessible to, TruStage as their third-party service provider.

20.    Plaintiff and Class Members took reasonable steps to secure their own Confidential Information and provided it to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access, and to provide timely notice of any security breach.

***TruStage's Security Representations***

21.    TruStage's publicly available privacy policy ("Privacy Policy") represents that its "policies and procedures are designed to protect personal information about [its customers]," that it "safeguard[s] nonpublic personal information in accordance with applicable state and federal regulations," and that TruStage "maintains physical, technological and administrative safeguards

to protect [its customers'] personal information and prevent unauthorized or accidental use, access, or loss."

22.     In its 2025 Security Practices, which are part of its Due Diligence Center package, the Company states that it takes its information-security risk posture very seriously and protects corporate information and business applications through administrative, physical, and technical safeguards. TruStage further represents that all production data is backed up on a regular, automated schedule, that errors are monitored, and that recovery testing occurs at least annually.

23.     The Company's representations were intended to be relied upon by consumers—including Plaintiff and Class Members—in deciding whether to entrust their Confidential Information to TruStage and to enter into and continue relationships with TruStage.

24.     One or more of the Company's security representations were not accurate when made. TruStage failed to implement and maintain commercially reasonable and appropriate safeguards sufficient to protect Plaintiff's and Class Members' Confidential Information from unauthorized access by criminal third parties.

25.     TruStage made these representations without exercising reasonable care to ensure their accuracy. Given the known risks associated with credential-based and third-party attacks, it knew or should have known that its security controls were inadequate to meet the standards it represented.

26.     Plaintiff and Class Members reasonably relied on TruStage's security representations when deciding to transmit their Confidential Information to TruStage and to continue their relationships with the Company.

*The Data Breach*

27.    On or around July 15, 2026, Defendant TruStage announced that its systems had been breached, and it launched an investigation into the Cyber Vulnerability Incident. The Company shut down its network in an effort to contain the breach.

28.    As of July 15, 2026, at 11:15 a.m. CT, the Company informed its customers that they may experience difficulty accessing account information, completing transactions, or submitting requests online. The affected services include, among others, customer access to certain TruStage systems and support channels, Guaranteed Asset Protection (GAP) claims, mechanical repair coverage claims, and payment protection products.

29.    Since that time, TruStage customers have had limited or no access to their TruStage accounts, including employee-benefit and retirement accounts such as 401(k) plans, and normal business operations with TruStage came to a halt.

30.    Upon information and belief, TruStage did not take reasonable or industry-standard measures to remediate the known vulnerability, permitting attackers to gain access to its systems and resulting in the Data Breach.

31.    Because TruStage controls the systems that store and process Plaintiff's and Class Members' Confidential Information, Plaintiff and Class Members cannot remediate these security deficiencies on their own, and TruStage's systems remain inadequately secured, exposing Plaintiff and Class Members to ongoing risk.

32.    On information and belief, Plaintiff and Class Members have been denied access to crucial details, including the root cause of the Data Breach, the specific vulnerabilities exploited, the identity of any threat actor, and the remedial measures undertaken to ensure that such a breach does not occur again.

7

*Plaintiff's Experiences and Injuries*

33.    Plaintiff Linda Kroutter entrusted her sensitive Confidential Information to Defendant. Defendant received and maintained Plaintiff's Confidential Information and assured Plaintiff that it would be protected; Plaintiff would not have entrusted Defendant with her Confidential Information otherwise.

34.    Plaintiff is very careful about the privacy and security of her Confidential Information. She does not knowingly transmit her Confidential Information over the internet in an unsafe manner, and she is careful to store any documents containing her Confidential Information in a secure location.

35.    Plaintiff does not recall ever learning that her information was compromised in a data-breach incident—other than the breach at issue here.

36.    On information and belief, Plaintiff's Confidential Information has already been published—or will be published imminently—by cybercriminals on the dark web.

37.    Plaintiff has spent—and will continue to spend—significant time and effort monitoring her accounts to protect herself from identity theft.

38.    Plaintiff fears for her personal financial security and worries about what information was exposed in the Data Breach. Because of Defendant's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, stress, fear, and frustration.

39.    Plaintiff suffered actual injury from the exposure and theft of her Confidential Information, which violates her right to privacy. Plaintiff also suffered actual injury in the form of the lost value of, and diminution in the value of, her Confidential Information, which is a form of intangible property that Defendant was required to protect.

40.    Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's Confidential Information in the hands of criminals.

41.    Plaintiff has a continuing interest in ensuring that her Confidential Information—which, upon information and belief, remains in Defendant's possession—is protected and safeguarded from additional breaches.

*Consumers Value Data Security*

42.    In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey." Cisco reported that, for the past six years, privacy has evolved "from relative obscurity to a customer requirement," with more than 75% of consumer respondents saying they will not purchase from an organization they do not trust with their data.

43.    Cisco further reported that privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly; that 89% of consumers stated "I care about data privacy"; that 83% of consumers declared they are "willing to spend time and money to protect data"; and that 51% of consumers have switched companies or providers over their data policies or data-sharing practices.

*Plaintiff and the Proposed Class Face a Significant Risk of Continued Identity Theft*

44.    Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages, including monetary losses, lost time, anxiety, and emotional distress.

45.     Plaintiff and Class Members also suffered, or are at an increased risk of suffering: (a) loss of the opportunity to control how their Confidential Information is used; (b) diminution in the value of their Confidential Information; (c) compromise and continuing publication of their Confidential Information; (d) out-of-pocket costs associated with preventing, detecting, and recovering from identity theft and fraud; (e) lost opportunity costs and wages from time spent mitigating the fallout of the Data Breach; (f) unauthorized use of their stolen Confidential Information; and (g) continued risk to their Confidential Information, which remains in Defendant's possession.

46.     Armed with the Confidential Information accessed in the Data Breach, identity thieves can commit a wide variety of crimes, including opening new financial accounts in Class Members' names, taking out loans in their names, using their information to obtain government benefits, filing fraudulent tax returns, obtaining driver's licenses in their names but bearing another person's photograph, and giving false information to law enforcement during an arrest.

47.     Stolen personal information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen personal information can be worth up to $1,000.00 depending on the type of information obtained. Even email addresses alone are sold in bulk for hundreds of dollars.

48.     The FTC has recognized that personal data is a form of currency, and the U.S. Attorney General has stated that stolen personal information has economic value. Stolen personal information trades on the black market for years, and criminals frequently post and sell stolen information openly and directly on the dark web—further exposing the information.

49.     It can take victims years to discover identity theft and fraud, giving criminals plenty of time to sell the Confidential Information far and wide.

50.     One way criminals profit from stolen personal information is by creating comprehensive dossiers on individuals called "Fullz" packages, which are shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining stolen personal information with unregulated data found elsewhere on the internet, such as phone numbers, emails, and addresses. The development of "Fullz" packages means the Confidential Information exposed in the Data Breach can easily be linked to other data of Plaintiff and the Class available on the internet.

51.     The Confidential Information exposed in the Data Breach is highly valuable to criminals, as reflected by dark-web pricing for stolen identity credentials. Criminals can purchase access to entire company data breaches for between $900 and $4,500, and complete "Fullz" dossiers can command up to $100 per record or more.

52.     Even a limited combination of data points can be leveraged to inflict further harm. Armed with just a name and date of birth, a data thief can use "social engineering"—manipulating victims through spam calls, text messages, or phishing emails—to obtain additional confidential information such as login credentials or Social Security numbers, making the Data Breach a starting point for further targeted attacks.

53.     Defendant's failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated their injury by depriving them of the earliest ability to take appropriate measures to protect their Confidential Information and mitigate the harm caused by the Data Breach.

54.     Plaintiff and Class Members must now spend, and will continue to spend, significant time and money to mitigate the risk of identity theft and fraud, including contacting credit bureaus to place fraud alerts and credit freezes, changing passwords, and monitoring their

financial accounts and credit reports for fraudulent activity—efforts that may take years given the delayed and often undetectable nature of identity theft. These efforts are consistent with the steps the FTC and the U.S. Government Accountability Office recognize that data-breach victims must take to protect themselves.

55.    The retail cost of credit monitoring and identity-theft monitoring is approximately $200 per year per person. This is a reasonable and necessary cost—for a minimum of five years—that Plaintiff and Class Members would not have to bear but for Defendant's failure to safeguard their Confidential Information.

***Third-Party and Vendor Breaches Impose Substantial and Foreseeable Harm***

56.    Industry research confirms that breaches involving third-party vendors are increasingly common and impose substantial financial burdens on affected organizations and individuals. The Verizon Data Breach Investigations Report reports that approximately 30% of all data breaches involve third parties—nearly double the proportion reported the year prior—reflecting the growing risks created by reliance on external service providers and interconnected systems.

57.    Third-party breaches are also among the most costly incidents organizations face. The IBM Cost of a Data Breach Report estimates that the global average cost of a breach approaches $4.9 million and identifies third-party involvement as one of the most common initial attack vectors, increasing breach costs by approximately 5% above the global average.

58.    Beyond these financial harms, third-party breaches commonly result in significant operational disruption, because third-party service providers often underpin critical aspects of operations, and breaches affecting such providers can cause substantial downtime and business interruption for their customers.

*Defendant Knew—or Should Have Known—of the Risk of a Data Breach*

59.     Defendant's data-security obligations were particularly important given the substantial increase in cyberattacks and data breaches in recent years. Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

60.     In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020. Cyberattacks have become so notorious that the Federal Bureau of Investigation and U.S. Secret Service issue warnings to potential targets so that they are aware of, and prepared for, a potential attack.

61.     The increase in such attacks, and the attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant. This risk was heightened for TruStage given its role as a financial-services and insurance provider entrusted with sensitive financial data and holding itself out as a cybersecurity authority.

62.     Data thieves regularly target companies like TruStage that receive, store, and maintain large volumes of sensitive personal and financial Information, precisely because that information is valuable and highly sought after for illegal monetization. Upon information and belief, TruStage was targeted for the Data Breach due to its status as a financial-services and insurance vendor that collects and maintains highly valuable Confidential Information on its systems.

63.     As a custodian of Confidential Information, TruStage knew or should have known the importance of safeguarding the information entrusted to it and the foreseeable consequences—including the significant costs imposed on Plaintiff and Class Members—if its data-security systems were breached.

13

*Defendant Failed to Follow FTC Guidelines*

64.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making, and the FTC has issued numerous guidelines identifying best data-security practices that businesses like Defendant should use to protect against unlawful data exposure.

65.    The FTC has concluded that the failure to maintain reasonable and appropriate data security constitutes an "unfair practice" under Section 5 of the FTC Act. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, setting guidelines for the data-security principles and practices businesses must use.

66.    Among other things, the FTC has declared that businesses must protect the personal information they keep, properly dispose of information no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct security problems. The FTC further explains that companies must limit access to sensitive data, require complex passwords, use industry-tested methods for security, monitor for suspicious activity, and verify that third-party service providers use reasonable security measures.

67.    Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its consumers' data constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

*Defendant Failed to Follow Industry Standards*

68.    Several best practices have been identified that, at a minimum, should be implemented by businesses like Defendant, including educating all employees; using strong passwords; implementing multi-layer security, such as firewalls, anti-virus, and anti-malware

software; encryption; multi-factor authentication; backing up data; and limiting which employees can access sensitive data.

69.    Other industry-standard best practices include installing appropriate malware-detection software; monitoring and limiting network ports; protecting web browsers and email management systems; properly configuring network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding critical points.

70.    Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of the NIST Cybersecurity Framework Version 2.0 and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established standards of reasonable cybersecurity readiness. These frameworks are applicable and accepted industry standards, and by failing to comply with them, Defendant opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff re-alleges and incorporates by reference each and every allegation contained from Paragraphs 1-69 as though fully set forth herein.

72.    Plaintiff brings this class action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose Confidential Information was compromised in the Data Breach affecting TruStage announced on or about July 15, 2026 (the "Class").

73.    Excluded from the Class are Defendant; any entity in which Defendant has a controlling interest; any parent, subsidiary, or affiliate of Defendant; any of Defendant's officers, directors, employees, agents, or legal representatives; any governmental entity; any successor or

15

assign; and any judge, justice, or judicial officer to whom this case is assigned, including their staff and immediate family.

74.     Plaintiff reserves the right to amend or modify the Class definition.

75.     Ascertainability. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control, because Defendant is able to identify the individuals whose Confidential Information it maintained and that was compromised in the Data Breach.

76.     Numerosity. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes hundreds of thousands, if not millions, of individuals.

77.     Commonality and Predominance. Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual members. These common questions include, among others: (a) whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Confidential Information; (b) whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised; (c) whether Defendant was negligent in maintaining, protecting, and securing Confidential Information; (d) whether Defendant breached contractual promises to safeguard Plaintiff's and the Class's Confidential Information; (e) whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it; (f) whether Defendant's breach notice was reasonable; (g) whether the Data Breach caused Plaintiff and the Class injury; (h) the proper measure of damages; and (i) whether Plaintiff and the Class are entitled to damages, restitution, and injunctive or declaratory relief.

78.    Typicality. Plaintiff's claims are typical of the claims of each Class Member, as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of securing information and notifying individuals about the Data Breach. Plaintiff and the Class seek the same remedies under the same legal theories, and there is no material factual variation between Plaintiff's claims and those of the Class.

79.    Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with those of the Class, and Plaintiff has retained counsel experienced in complex class-action and data-privacy litigation who are capable of, and intent upon, vigorously prosecuting this action.

80.    Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation, making it impracticable for Class Members to obtain effective redress individually. Individualized litigation would also increase delay and expense and create the risk of inconsistent or contradictory adjudications, whereas a class action presents no unusual management difficulties and provides the benefits of single-proceeding adjudication, economies of scale, and comprehensive supervision by a single court.

81.    The prosecution of separate actions against Defendant would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant, and adjudications with respect to individual Class Members could, as a practical matter, be dispositive of the interests of other Class Members or substantially impair their ability to protect their interests.

17

## FIRST CAUSE OF ACTION
### Negligence

### (On Behalf of Plaintiff and the Class)

82.     Plaintiff incorporates by reference paragraphs 1-81 as if fully set forth herein.

83.     Plaintiff and the Class entrusted their Confidential Information to Defendant on the premise and with the understanding that Defendant would safeguard it, use it for business purposes only, and not disclose it to unauthorized third parties.

84.     Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure to use adequate data security in accordance with industry standards would result in their Confidential Information being compromised in a data breach. That foreseeable danger came to pass.

85.     Defendant owed Plaintiff and Class Members at least the following duties: (a) to exercise reasonable care in handling and using the Confidential Information in its care and custody; (b) to implement industry-standard security procedures sufficient to reasonably protect the Confidential Information from a data breach, theft, and unauthorized access; (c) to promptly detect attempts at unauthorized access; and (d) to notify Plaintiff and Class Members within a reasonable timeframe of any breach of the security of their Confidential Information.

86.     Defendant had full knowledge of the sensitivity of the Confidential Information and the types of harm that Plaintiff and the Class could and would suffer if that information were wrongfully disclosed. Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices, particularly because Defendant actively sought and obtained their Confidential Information.

18

87. Given its cybersecurity expertise, Defendant knew or should have known that its products and associated services used to protect systems containing highly sensitive financial and personal information were not properly protected. The risk that unauthorized persons would attempt to gain access to the Confidential Information and misuse it was foreseeable.

88. Defendant breached these duties by failing to implement and maintain adequate, industry-standard cybersecurity safeguards for its environment and related systems; by failing to promptly detect and remediate known vulnerabilities; and by failing to provide reasonably timely notice of the Data Breach.

89. Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the Confidential Information of Plaintiff and Class Members, which actually and proximately caused the Data Breach and Plaintiff's and Class Members' injuries.

90. As a direct and proximate result of Defendant's negligence, unauthorized actors gained access to systems containing Plaintiff's and Class Members' Confidential Information, and Plaintiff and Class Members have suffered and will suffer damages, including the theft and improper disclosure of their Confidential Information, the lost value of their Confidential Information, lost time and money incurred to mitigate and remediate the effects of the Data Breach, an increased risk of future harm, and emotional distress.

## SECOND CAUSE OF ACTION
### Negligence *Per Se*

### (On Behalf of Plaintiff and the Class)

91. Plaintiff incorporates by reference paragraphs 1-81 as if fully set forth herein.

92.     Under Section 5 of the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data-security practices to safeguard Plaintiff's and Class Members' Confidential Information.

93.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect the personal information entrusted to a business such as Defendant. FTC publications and orders promulgated under the FTC Act also form part of the basis of Defendant's duty to protect Confidential Information.

94.     Defendant breached its duties under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data-security practices, and by failing to comply with applicable industry standards described herein.

95.     Defendant's conduct was particularly unreasonable given the nature and amount of Confidential Information it collected and stored and the foreseeable consequences of a data breach. The harm that occurred is the type of harm the FTC Act is intended to guard against.

96.     But for Defendant's wrongful and negligent breach of its duties, Plaintiff and Class Members would not have been injured. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of its duties, and Defendant's violations constitute negligence per se.

97.     As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered and will continue to suffer the injuries detailed herein.

### THIRD CAUSE OF ACTION
**Breach of Implied Contract**

**(On Behalf of Plaintiff and the Class)**

98.     Plaintiff incorporates by reference paragraphs 1-81 as if fully set forth herein.

20

99.     Plaintiff and Class Members either directly contracted with Defendant or were the third-party beneficiaries of contracts with Defendant. Plaintiff and Class Members provided their Confidential Information to Defendant in exchange for its consumer insurance, lending protection, payment protection, and related financial products and services.

100.    Plaintiff and Class Members reasonably understood that a portion of the consideration paid to Defendant would be used to pay for adequate cybersecurity measures, and that Defendant would use adequate cybersecurity measures to protect the Confidential Information they were required to provide, based on Defendant's duties under state and federal law and its internal policies.

101.    Through its internal policies and Privacy Policy, Defendant agreed to protect and not disclose the Confidential Information to unauthorized persons, and represented that it had a legal duty to protect that information. Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of any unauthorized access to or theft of their Confidential Information.

102.    Plaintiff and Class Members would not have entrusted their Confidential Information to Defendant in the absence of such an agreement, and they fully performed their obligations under the implied contracts.

103.    The covenant of good faith and fair dealing is an element of every contract, requiring the parties to act with honesty in fact and to preserve the spirit—not merely the letter— of the bargain.

104.    Defendant materially breached the implied contracts by: (a) failing to safeguard Plaintiff's and Class Members' Confidential Information; (b) failing to notify them promptly of the intrusion into its computer systems; (c) failing to comply with industry standards; (d) failing

to comply with the legal obligations necessarily incorporated into the agreements; and (e) failing to ensure the confidentiality and integrity of the Confidential Information that Defendant created, received, maintained, and transmitted.

105.    Defendant's material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries as detailed herein.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**

**(On Behalf of Plaintiff and the Class)**

106.    Plaintiff incorporates by reference paragraphs 1-81 as if fully set forth herein.

107.    This claim is pleaded in the alternative to the breach of implied contract claim.

108.    Plaintiff and Class Members conferred a benefit upon Defendant by paying for and purchasing its products and services and by providing their Confidential Information, and Defendant appreciated or had knowledge of the benefits it received.

109.    Plaintiff and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the Confidential Information they were required to provide, based on Defendant's duties under state and federal law and its internal policies.

110.    Defendant enriched itself by saving the costs it reasonably should have expended on data-security measures to protect Plaintiff's and Class Members' Confidential Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant calculated to avoid its data-security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures.

111.    Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of the benefit conferred by Plaintiff and Class Members, including the

22

amounts paid for products and services and the value of their Confidential Information. Plaintiff and Class Members have no adequate remedy at law.

112.    Defendant should be compelled to disgorge, into a common fund for the benefit of Plaintiff and Class Members, all unlawful or inequitable proceeds it received because of its misconduct.

**FIFTH CAUSE OF ACTION**
**Declaratory Judgment**

**(On Behalf of Plaintiff and the Class)**

113.    Plaintiff incorporates by reference paragraphs 1-81 as if fully set forth herein.

114.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief.

115.    In the fallout of the Data Breach, an actual controversy has arisen concerning Defendant's duties to use reasonable data security. Plaintiff alleges that Defendant's actions were—and still are—inadequate and unreasonable, and that Plaintiff and Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

116.    This Court should enter a judgment declaring, among other things, that: (a) Defendant owed—and continues to owe—a legal duty to use reasonable data security to secure the Confidential Information entrusted to it; (b) Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act; (c) Defendant breached, and continues to breach, its duties by failing to use reasonable measures to protect the Confidential Information entrusted to it; and (d) Defendant's breach of its duties caused—and continues to cause—injury to Plaintiff and Class Members.

117.    The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the Confidential Information entrusted to it, including by requiring Defendant to: (a) provide lifetime credit monitoring and identity-theft insurance to Plaintiff and Class Members; (b) engage third-party security auditors and penetration testers for periodic audits; (c) implement multi-factor authentication and encryption for all sensitive data; (d) segment applications and conduct regular database scans; and (e) provide ongoing employee cybersecurity training and education.

118.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy, because many of the resulting injuries are not readily quantified in full and the hardship to Plaintiff and Class Members far exceeds any minimal hardship to Defendant. An injunction would benefit the public by preventing another data breach and further injuries to Plaintiff, Class Members, and the public at large.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members respectfully request that the Court enter an order and judgment against Defendant as follows:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

24

D.  Awarding Plaintiff and the Class compensatory, statutory, exemplary, and punitive damages, as allowed by law, in an amount to be proven at trial;

E.  Awarding restitution to Plaintiff and the Class in an amount to be determined at trial;

F.  Awarding attorneys' fees and costs of litigation, as allowed by law;

G.  Awarding the maximum prejudgment and post-judgment interest allowed by law;

H.  Granting Plaintiff and the Class leave to amend this Complaint to conform to the evidence produced at trial; and

I.  Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and Class Members demand a trial by jury of all claims and issues so triable as of right.

Dated: July 21, 2026

Respectfully submitted,

/s/ Nickolas J. Hagman
Nickolas J. Hagman (Wis. Bar No. 1085424)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, IL 60603
Tel.: 312.782.4880
nhagman@caffertyclobes.com

Jonathan S. Mann*
**PTTMAN, DUTTON, HELLUMS, BRADLEY & MANN, P.C.**
2001 Park Place North, Suite 1110
Birmingham, AL 35203
Tel: (205) 322-8880
E: jonm@pittmandutton.com

*pro hac vice forthcoming

Attorneys for Plaintiff and the Proposed Class

25